IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | | |
|---|---|---|
| Drubay Hall, | ) | Civil Action No.  2:12-01692-RBH-BHH |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | **REPORT AND RECOMMENDATION** |
| Carolyn W. Colvin, Acting | ) | **OF MAGISTRATE JUDGE** |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

This case is before the Court for a Report and Recommendation pursuant to Local Rule 73.02(B)(2)(a), D.S.C., concerning the disposition of Social Security cases in this District, and Title 28, United States Code, Section 636(b)(1)(B).[1]

The plaintiff, Drubay Hall, brought this action pursuant to Section 205(g) of the Social Security Act, as amended, (42 U.S.C. Section 405(g)), to obtain judicial review of a final decision of the Commissioner of Social Security Administration regarding his claim for disability insurance benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act.

## RELEVANT FACTS AND ADMINISTRATIVE PROCEEDINGS

The plaintiff was 47 years old on his alleged disability onset date of April 1, 2004. (R. at 13, 16.) He alleged disability due to bipolar disorder and anxiety. (R. at 13, 104.) He has a high school education and has past relevant work as a machine operator and armed guard. (R. at 16.)

The plaintiff protectively filed an application for DIB and SSI on January 22, 2009. (R. at 11.) His applications were denied initially and on reconsideration. *Id.* After a hearing before an Administrative Law Judge (ALJ) on July 12, 2010, the ALJ issued a decision on August 19, 2010, in which he found that the plaintiff was not disabled. (R. at 11-18.) The

_____

[1] A Report and Recommendation is being filed in this case, in which one or both parties declined to consent to disposition by the magistrate judge.

Appeals Council denied the plaintiff's request for review (R. at 1-3), making the ALJ's decision the Commissioner's final decision for purposes of judicial review.

In making her determination that the Plaintiff is not entitled to benefits, the Commissioner has adopted the following findings of the ALJ:

> (1)     The claimant meets the insured status requirements of the Social Security Act through September 30, 2009.
>
> (2)     The claimant has not engaged in substantial gainful activity since April 1, 2004, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).
>
> (3)     The claimant has the following severe impairments: Bipolar disorder and anxiety (20 CFR 404.1520(c) and 416.920(c)).
>
> (4)     The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).
>
> (5)     After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: The claimant is limited to simple, routine, repetitive tasks in a low stress environment with only occasional public contact. Low stress is defined as only occasional changes in the job setting and in decision making.
>
> (6)     The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).
>
> (7)     The claimant was born on April 20, 1956 and was 47 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563 and 416.963).
>
> (8)     The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).
>
> (9)     Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the

2

claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

(10) Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).

(11) The claimant has not been under a disability, as defined in the Social Security Act, from April 1, 2004, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

## APPLICABLE LAW

The Act provides that disability benefits shall be available to those persons insured for benefits, who are not of retirement age, who properly apply, and who are under a "disability."  42 U.S.C. § 423(a).  "Disability" is defined in the Act as the inability to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than" twelve months.  42 U.S.C. § 1382c(a)(3)(A).

To facilitate a uniform and efficient processing of disability claims, the Act has by regulation reduced the statutory definition of "disability" to a series of five sequential questions.  An examiner must consider whether the claimant (1) is engaged in substantial gainful activity, (2) has a severe impairment, (3) has an impairment which equals an illness contained in the Administration's official Listing of Impairments found at 20 C.F.R. Part 4, Subpart P, Appendix 1, (4) has an impairment which prevents past relevant work, and (5) has an impairment which prevents him from doing substantial gainful employment.  *See* 20 C.F.R. § 416.920.  If an individual is found not disabled at any step, further inquiry is unnecessary.  *Id.*; *see also Hall v. Harris*, 658 F.2d 260 (4th Cir. 1981).

A plaintiff is not disabled within the meaning of the Act if he can return to past relevant work as it is customarily performed in the economy or as the claimant actually performed the work.  Social Security Ruling (SSR) 82–61, 1975-1982 Soc. Sec. Rep. Serv.

3

836 (West 1983).  The plaintiff bears the burden of establishing his inability to work within the meaning of the Act.  42 U.S.C. § 1382c(a)(3)(H)(I).  He must make a prima facie showing of disability by showing that he is unable to return to his past relevant work.  *Grant v. Schweiker*, 699 F.2d 189, 191 (4th Cir. 1983).

Once an individual has established an inability to return to his past relevant work, the burden is on the Commissioner to come forward with evidence that the plaintiff can perform alternative work and that such work exists in the regional economy.  The Commissioner may carry the burden of demonstrating the existence of jobs available in the national economy which the plaintiff can perform despite the existence of impairments which prevent the return to past relevant work by obtaining testimony from a vocational expert.  *Id.* at 191-92.

The scope of judicial review by the federal courts in disability cases is narrowly tailored to determine whether the findings of the Commissioner are supported by substantial evidence and whether the correct law was applied.  *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990); *see also Richardson v. Perales*, 402 U.S. 389 (1971).  Consequently, the Act precludes a *de novo* review of the evidence and requires the court to uphold the Commissioner's decision as long as it is supported by substantial evidence.  *Pyles v. Bowen*, 849 F.2d 846, 848 (4th Cir. 1988) (*citing* U.S.C. § 405(g)*; Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986)).  The phrase "substantial evidence" is defined as:

> evidence which a reasoning mind would accept as sufficient to support a particular conclusion.  It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance.  If there is evidence to justify a refusal to direct a  verdict were the case before a jury, then there is "substantial evidence."

*Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966).

Thus, it is the duty of this court to give careful scrutiny to the whole record to assure that there is a sound foundation for the Commissioner's findings, and that his conclusion is rational.  *Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964).  If there is substantial

4

evidence to support the decision of the Commissioner, that decision must be affirmed. *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972).

## DISCUSSION

The plaintiff contends that the ALJ erred in failing to find him disabled. Specifically, the plaintiff alleges that the ALJ (1) failed to fully develop the record and (2) improperly relied upon the Medical Vocational Guidelines.

The Court will address each alleged error in turn.

### I.    Consultative Examinations

The plaintiff first argues that the ALJ erred in failing to fully develop the record. (Pl. Brief at 8.) As the defendant notes, the plaintiff's real argument appears to be that the ALJ improperly discounted the opinions of consultative examiners Drs. Cashton Spivey and Dr. Dennis Chipman. (Pl. Brief at 8-9.)

The ALJ gave "little weight" to the June 14, 2007 exam of Dr. Spivey "because the GAF of 45 is inconsistent with the examiner's own findings." (R. at 16.) The plaintiff's only objection is that this determination constitutes an improper medical interpretation of the ALJ.

It is certainly true that "[a]n ALJ cannot play the role of doctor and interpret medical evidence when he or she is not qualified to do so." *Murphy v. Astrue*, 496 F.3d 630, 634 (7th Cir. 2007). As a lay person, an ALJ is "simply not qualified to interpret raw medical data *in functional terms* . . . ." *Nguyen v. Chater*, 172 F.3d 31, 35 (1st Cir. 1999) (emphasis added); *see also Manso-Pizarro v. Sec'y of Health & Human Services*, 76 F.3d 15, 17 (1st Cir.1996) (stating that "an ALJ, as a lay person, is not qualified to interpret raw data in a medical record"); *Ferguson v. Schweiker*, 765 F.2d 31, 37 (3d Cir.1985) ("By independently reviewing and interpreting the laboratory reports, the ALJ impermissibly substituted his own judgment for that of a physician; an ALJ is not free to set his own expertise against that of a physician who presents competent evidence.")

But, the ALJ's analysis is not of this kind.  He has not interpreted the raw GAF test itself.  Rather, he has rejected its score relative to other substantial evidence of record, namely, the records of Dr. Spivey.  This is permissible.  *See Halverson v. Astrue*, 600 F.3d 922, 931 (8th Cir.2010); *Graham v. Barnhart*, 76 Fed. Appx. 829, 831 (9th Cir. 2003.)  The weighing of various evidence is precisely the typical province of the ALJ.  *See* 20 C.F.R. §416.927(d)(2)(2004); *Mastro v. Apfel*, 270 F.3d 171, 178 (4th Cir. 2001).  If such a comparison was considered "playing doctor," as the plaintiff proposes, then the whole of the administrative review would be an illegality. Moreover, a GAF score is considered to have only an indirect correlation to the severity requirements of the Social Security Administration's mental disorders listings and not specifically endorsed by the Commissioner.  *See McFarland* v. Astrue, 288 Fed. Appx. 357, 359 (9th Cir. 2008); *Halverson*, 600 F.3d at 931.

The plaintiff also complains concerning the ALJ's consideration of Dr. Chipman's opinion.  Dr. Chipman found that the plaintiff "would have great difficulty maintaining consistency over a period of time with any type of ongoing employment."  (R. at 290.) The ALJ discounted the opinion of Dr. Chipman because he found that it was inconsistent with other treating sources that indicated that the plaintiff's mental impairments were effectively controlled.  (R. at 16.)  *See* 20 C.F.R. § 404.1527(c)(4) (stating an ALJ must consider whether an opinion is consistent with the record as a whole).  Indeed, the following evidence is of record.   In June 2009, Dr. Donna Millar noted that the plaintiff's bipolar disorder was "[d]oing well on Depakote."  (R. at 283.) In August 2009, the last time he received treatment at Anderson-Oconee-Pickens, the plaintiff was found emotionally stable. (R. at 280.)  And, in September 2009, Nurse Sandra Jacobs noted that th plaintiff's bipolar disorder was doing well (R. at 282.)

The plaintiff does little to challenge this basis other than to complain that there is no discussion as to why these other sources were more credible than Dr. Chipman.  But, that

is the ALJ's bailiwick – deciding between competing and comparable authority.    Dr. Chipman's opinion was not entitled to any particular weight or regulatory deference, as a non-treating source, and the decision seems to imply that simple numerosity of opinion on the matter may have been persuasive to the ALJ.  Regardless, the fact that plaintiff or even the Court would have weighed the evidence differently is of no moment.  *See Blalock*, 483 F.2d at 775.  As recited, the ALJ had substantial evidence to conclude as he did, and the Court will not disturb his decision.  The plaintiff has not challenged that the evidence relied upon by the ALJ somehow does not say what he said it did.

The ALJ's review of the opinions of Drs. Spivey and Chipman certainly does not suggest that the ALJ had some additional duty to develop the record, as the plaintiff has argued.  *See* 20 C.F.R. § 404.1519a; *see also Bishop v. Barnhart*, 78 Fed. App'x 265, 268 (4th Cir. 2003).  The undersigned would not recommend any remand for this particular alleged error.

## II.    Medical Vocational Guidelines

Lastly, the plaintiff appears to argue that the ALJ erred in finding he could perform work that exists in significant numbers in the national economy at step five.  (Pl. Brief at 10.) As the defendant rightly interprets, this argument appears to be premised on an allegation by the plaintiff that the ALJ relied on the Medical-Vocational Guidelines (Grids), when the Grids "do not take into account whether or not a person must live in a situational environment a[n]d/or are working in a structured environment." (Pl. Brief at 10.)

Grid Rules, "relieve the [Commissioner] of the need to rely on vocational experts by establishing through rulemaking the types and numbers of jobs that exist in the national economy."*Heckler v. Campbell*, 461 U.S. 458, 461 (1983).  The Grid Rules are utilized at step five of the sequential evaluation in determining whether jobs exist that a claimant can perform, where the claimant's "impairment(s) prevents the performance of his or her vocationally relevant past work."  20 C.F.R. Pt. 404, Subpt. P, App. 2, § 200.00.

Regardless of what the plaintiff means, precisely, the objection fails because the ALJ did not rely on the Grid Rules as determinative. (R. at 17.) The presence of non-exertional impairments required recourse to a Vocational Expert, *see* 20 C.F.R. § 404.1569; *Roberts v. Schweiker,* 667 F.2d 1143, 1145 (4th Cir.1981); *Pratts v. Chater*, 94 F.3d 34, 39 (2nd Cir. 1996), which the ALJ, in fact, employed and relied upon concerning the availability of work in the national economy that an individual of the plaintiff's residual functional capacity could perform. (R. at 17.)

There can be no error in the ALJ's reliance on the Grid Rules; they were utilized only as a framework. (R. at 17.) He expressly "based" his determination on the testimony of the VE, testimony which has not been challenged.

### CONCLUSION AND RECOMMENDATION

Based on the foregoing, this Court concludes that the findings of the ALJ are supported by substantial evidence and recommends that the decision of the Commissioner be affirmed.

IT IS SO RECOMMENDED.

s/BRUCE H. HENDRICKS
UNITED STATES MAGISTRATE JUDGE

June 25, 2013
Charleston, South Carolina